885 F.2d 871 (Table)
**Unpublished Disposition**

Page 1

**(Cite as: 885 F.2d 871, 1989 WL 109443 (6th Cir.(Tenn.)))**

**C**
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Keith Herbert BROOME, Plaintiff-Appellant,
v.
DAZEY CORPORATION, Defendant-Appellee.

No. 88-5983.

Sept. 22, 1989.

E.D.Tenn.

AFFIRMED.

On Appeal from the United States District Court for the Eastern District of Tennessee.

Before MERRITT and BOYCE F. MARTIN, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.

MERRITT, Circuit Judge.

**\*\*1** The plaintiff, Keith Herbert Broome, appeals a general jury verdict for the defendant, Dazey Corporation, in this wrongful death action based on products liability. Broome's wife and step-son died in a fire allegedly caused by a can opener manufactured by Dazey. On appeal, Broome argues that the District Court committed reversible error with respect to three evidentiary rulings made during the trial which 1) allowed Dazey, over Broome's objection, to introduce documentary and testimonial evidence of fire officials' conclusions as

to the cause of the fire; 2) limited the use of evidence as to prior claims against Dazey; and 3) limited Broome's cross-examination of Dazey's Chief Engineer about prior claims. For the reasons set forth below, we affirm the District Court's denial of Broome's motion for a new trial.

I.

Regina and Aaron Broome, the wife and step-son of Keith Broome, died in a fire in their home. Keith Broome subsequently filed this action for damages against Dazey. The case was tried to a jury, and Dazey prevailed. Broome did not request a special verdict; consequently, we do not know on what basis the jury reached its decision.

Based on his personal investigation of the Broome home and on the observations, also entered into evidence, of Captain James T. Smith, Fire Chief Phil Vinson of the Bristol, Tennessee Fire Department, concluded that an electric frying pan left unattended in the kitchen caused the fire. Vinson determined the fire had originated in a corner of the kitchen where a metal utility cart had stood. This determination was made by examination of the "V" burn pattern made by the fire. The point of the "V" pattern, created by the burn, indicates the point of origin of the fire which Vinson determined started on top of a metal utility cart. Further investigation revealed that during the fire something had fallen on the electric skillet sitting on top of the cart. The skillet fit perfectly in the impression it had left on the top of the cart. Chief Vinson also found that the thermostatic control device for the heating element of the electric skillet was in the "on" position. Additionally, the skillet contained a burned greasy residue that indicated something had been left cooking in it. All other kitchen appliances were in the "off" position. Chief Vinson concluded that all these facts supported a conclusion that the conflagration was started by a grease fire. He further found that the burned area in the kitchen had all the earmarks of a grease fire: it started quickly once ignition temperature was reached and then flashed and burned intensely for a short period of time.

The finding of a grease fire is also consistent with the statement of Keith Broome's mother, Thelma

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT
1

885 F.2d 871 (Table)                                                                    Page 2
**Unpublished Disposition**

(Cite as: 885 F.2d 871, 1989 WL 109443 (6th Cir.(Tenn.)))

Broome, that she and other family members had been away from the residence only about thirty minutes before they returned to find that the fire had ignited, burned intensely and produced a great deal of heat and damage in a short period of time. Furthermore, Dazey's expert, Joseph Googe, professor of electrical engineering at the University of Tennessee, testified that in his investigation he found no evidence that contradicted the conclusions of Chief Vinson and Captain Smith that the fire started in an unattended skillet.

**\*\*2** Chief Vinson's conclusions conflicted, however, with the Broomes' testimony concerning the location of the appliances in the kitchen and concerning the use of the appliances. Thelma Broome testified that the skillet was unplugged prior to her leaving the residence and that a Dazey can opener was in the top receptacle of the utility cart.

It was Broome's theory that the Dazey can opener was defective or unreasonably dangerous and that it caused the fire. The can opener in question was one with a shaded pole or self-starting motor. Broome contended that it is possible for such a can opener motor to run until it overheats and ignites the surrounding paper and plastic materials within the can opener housing. Once ignited, the plastic housing would sustain combustion until the plastic was consumed.

Robert May, a professor of electronic engineering technology at East Tennessee State University, investigated the fire scene for an adjustment company. Testifying as Broome's primary witness, May concluded that the fire was caused by whatever appliance had been plugged into a certain outlet. Thelma Broome identified the appliance as a can opener; and Keith Broome produced a manual to show that their can opener was a Dazey model. Aside from the manual and Thelma Broome's testimony, there is no physical evidence that a can opener was in the kitchen at the time of the fire. At one point Mr. May identified a "carbonated glob" as the can opener. However, after being x-rayed, the alleged can opener turned out to be a Tupperware bowl. Additionally, Mr. May performed tests on several Dazey can openers in an attempt to get one to ignite but was unsuccessful. No combustion of

the plastic housing of the can opener occurred. Only when one of Broome's experts held a Dazey can opener over an open flame did it burn.

A second expert hired by Broome admitted that the Dazey can opener was manufactured in accordance with the applicable Underwriters Laboratory standard and also met Canadian safety standards, which are more stringent than those applicable in the United States.

The District Judge admitted evidence that Dazey had been confronted with thirteen prior claims for damages arising from fires allegedly started by a Dazey can opener. This evidence came in several forms: notebook compiled by Dazey's Chief Engineer Lisle Talge, deposition testimony read into evidence and live testimony from one former fire victim. In the case of the fire that was described in the deposition testimony, the can opener, as in the present case, was never produced. Broome requested that the prior claims evidence be admitted as evidence of the existence of a defect, of causation and of the existence of a dangerous condition. The trial judge gave an instruction limiting the jury's consideration of this evidence to two issues: Dazey's knowledge of the defect or dangerous condition of its product and punitive damages.

II.

Broome sought to exclude the fire report prepared by Captain James Smith and the testimony concerning the cause and origin of the fire of Fire Chief Vinson and Captain Smith. Captain Smith was on the scene directing the fire fighting, and both he and Fire Chief Vinson immediately investigated the fire's origin and cause. Both men were veteran fire fighters whose qualifications as experts were well established and not challenged by Broome. However, he claims the conclusions stated in the written fire report and in the firemen's testimony were based on unfounded assumptions and, therefore, inadmissible under Rules 703 and 803 of the Federal Rules of Evidence.

**\*\*3** Rule 703 requires that expert opinion may be based upon "facts or data in the particular case," as long as these are "perceived by or made known to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

885 F.2d 871 (Table)
Unpublished Disposition

Page 3

(Cite as: 885 F.2d 871, 1989 WL 109443 (6th Cir.(Tenn.)))

the expert at or before the hearing." Fed.R.Evid. 703. Both Smith and Vinson went directly to the scene of the fire and observed objects in the kitchen in an effort to determine the cause of the fire. While Broome does not like the way both men analyzed the data they perceived first-hand, he had ample opportunity to cross-examine them and point out any inconsistencies in their observations. Rule 703 bars the firemen only from presenting as evidence conclusions based on things they did not see or of which they had no direct knowledge. Since this was not the situation in the case before us, Broome's Rule 703 challenge fails.

The Rule 803(8)(C) challenge runs only to the report prepared by Smith. This rule has recently been given a new and broad interpretation by the Supreme Court in *Beech Aircraft Corp. v. Rainey:*

We hold ... that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.

--- U.S. ----, 109 S.Ct. 439, 450 (1988) (footnote omitted). Broome has done nothing to challenge the trustworthiness of the report except to disagree with its analysis and conclusion. Notwithstanding his challenge, the report is "based on a factual investigation" made by the same person who prepared the report. And all necessary indicia of trustworthiness are present. Previously, this Court has noted four factors in an analysis of trustworthiness: 1) timeliness of investigation; 2) special skill of the official; 3) holding of an appropriate hearing; and 4) motivational problems. *Baker v. Homes Corp.,* 588 F.2d 551 (6th Cir.), *cert. denied,* 441 U.S. 933 (1978). Of these factors, only the hearing is absent, but none is typically required for a report of this kind. Consequently, the District Court properly admitted Captain Smith's report.

III.

Broome also claims that the trial judge abused his discretion by limiting the evidence of prior claims

to the issue of notice. Broome argues that the judge's decision to limit the admission of the prior claims is not in accord with other appellate courts and violates the logical inferences to be drawn from recent cases from this Circuit. *See Koloda v. General Motors Parts Div.,* 716 F.2d 373 (6th Cir.1983), and *Hines v. Joy Manufacturing Company,* 850 F.2d 1146 (6th Cir.1988). We are unpersuaded by Broome's arguments.

We note at the outset that the trial judge has discretion in assessing the relevance of evidence of prior claims as well as their possible prejudice. **Allegations in an out-of-court complaint are hearsay** not subject to cross-examination and therefore not admissible for the truth of the matters asserted. This is the case with the prior claims evidence introduced in the form of a notebook kept by Dazey Chief Engineer Tagle at the Broome trial. Other evidence consisted of the deposition testimony read into evidence of Dr. Peter Alizzeo and his wife and the live testimony of Mrs. Jacqueline McClellan. The relevance of the Allizeo testimony is dubious because, in the Alizzeo fire, no physical evidence of the can opener was ever produced. In light of the hearsay nature of most of the evidence and the relevance problem undermining the lack of physical evidence from the Alizzeo depositions, we cannot say that the trial judge abused his discretion by limiting the purpose for which the evidence of prior claims could be admitted.

**4 We do not agree that our decisions in *Koloda* and *Hines, supra,* are on point and require reversal in this case. In *Koloda* the defendant sought to introduce the evidence for the purpose of notice only. Consequently, the holding of *Koloda,* allowing in that evidence, encompasses only the purpose for which the trial judge in Broome did admit the prior claim evidence. The *Hines* case, like *Koloda,* involved the admission of evidence involving a lack of prior claims. Again, the evidence was admitted to show lack of notice and lack of defective design and not for the reasons requested by Broome. Additionally, we note that both of these recent cases involved the introduction of evidence of the *lack* of prior claims, a situation McCormick notes is inherently less prejudicial. *See* E. Cleary, *McCormick on Evidence* § 200 at 591

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

885 F.2d 871 (Table)
**Unpublished Disposition**

(Cite as: 885 F.2d 871, 1989 WL 109443 (6th Cir.(Tenn.)))

(3d ed. 1984). While Broome makes much of the *Hines* Court's reliance on McCormick in its discussion of the possible reasons for which *lack* of prior claims evidence *may* be used, 850 F.2d at 1154, Broome fails to quote McCormick on the greater risk of prejudice inherent when the request is for the admission of positive, rather than negative, evidence of prior claims. *See* E. Cleary, *McCormick on Evidence* § 200 at 591.

The only guidance the trial judge had was from this Court's decision in *Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co.,* 438 F.2d 833, 837-38 (6th Cir.1971), in which we held that there is no requirement that evidence of similar occurrences be admitted. The *Olin* plaintiff sought to admit evidence of a second equipment malfunction on the issue of causation. Our Court concluded that the trial court properly excluded such evidence where it posed a "likelihood of misleading the jury and confusing the issue." *Id.* at 838 (citations omitted). This is an entirely proper ruling on grounds that the evidence was unduly prejudicial.

This Court in *Olin,* like other appellate courts, recognized that district courts ruling on prior claims evidence must apply a balancing approach to decide whether to admit positive evidence of prior claims. Although the trial judge in the case before us did not enumerate his reasons, we assume he engaged in this balancing approach under Rule 403 of the Federal Rules of Evidence. When reviewing a trial judge's decision to admit or exclude evidence on grounds of relevance, the appellate court should not disturb the judgment of the trial judge absent an error amounting to an abuse of discretion. *Martin v. Weaver,* 666 F.2d 1013, 1020 (6th Cir.1981), *cert. denied,* 456 U.S. 962 (1982). Reviewing the entire trial transcript, we cannot say such an error occurred in this case.

IV.

Finally, Broome claims that the trial judge improperly limited his cross-examination of Lisle Tagle, Dazey's Chief Engineer, by refusing to allow him to testify to the extent of the harms caused by the prior can opener fires. The court, on its own motion, interrupted to bar further examination about prior incidents beyond proof of Dazey's knowledge

of the incident. This ruling was correct. The evidence in question was hearsay, an assertion that the victim's son almost suffocated in the fire. Tagle was not present at the fire and could only testify as to out-of-court statements not tested by cross-examination.

**5 Accordingly, the judgment of the District Court is affirmed.

885 F.2d 871 (Table), 1989 WL 109443 (6th Cir.(Tenn.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works